### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERIN COLEMAN : | |
| : | |
| v. : | |
| : | CIVIL ACTION NO. 22-1445 |
| CHILDREN'S HOSPITAL OF : | |
| PHILADELPHIA : | |
| : | |

**McHUGH, J.**                                                                                                             **AUGUST 23, 2022**

### MEMORANDUM

Plaintiff Erin Coleman has brought this action alleging violations of the Americans with Disabilities Act ("ADA") and the Family and Medical Leave Act ("FMLA") related to discrimination and retaliation she faced after taking time off for gall bladder surgery and to recover from COVID-19. Following an initial Motion to Dismiss, Plaintiff elected to amend under Rule 15 and filed the pending Amended Complaint, which for the first time (1) properly claimed exhaustion of administrative remedies, Am. Compl. ¶ 5, (2) identified the putative disabilities and type of accommodation she believes they required, Am. Compl. ¶¶ 13-19, and (3) offered certain conclusory allegations about the conduct of her employers, Am. Compl. ¶¶ 38-44. Defendant again move to dismiss. Despite these amendments, Plaintiff's operative complaint remains factually vague and rests almost entirely on conclusory statements for certain key elements. I will therefore grant Defendant's motion and dismiss the Complaint, albeit with one more chance to amend.

**I.      Factual Allegations**

Plaintiff Erin Coleman was an employee of Defendant CHOP. Am. Compl. ¶¶ 6, 8. The Amended Complaint does not identify her position or how long she worked there. At some point prior to October 2020, Plaintiff began suffering "from a clogged duct in her [gall]bladder, which

was preventing appropriate blood flow and caused her to suffer from nausea, vomiting, fatigue, among other negative side effects." *Id.* ¶ 12. She alleges that "[t]his medical condition interfered with major life activities including but not limited to performing manual tasks, eating, digestion, and the proper flow of blood throughout Plaintiff's body." *Id.* ¶13. Plaintiff required medical treatment for this condition including appointments with her physician, *id.* ¶ 15, and a cholecystectomy, *id.* ¶ 16. Following the cholecystectomy in October 2020, she required time off until Thanksgiving 2020 to recover. *Id.*. ¶ 17. Some time after the surgery, she contracted COVID-19.[1] *Id.* ¶ 19. Plaintiff alleges that she "requested a reasonable accommodation of time off from work," but does not identify when or to whom she made such requests or how Defendant's agents purportedly responded to such requests. *Id.* ¶ 25.

At some point—the Amended Complaint does not identify when—she returned to work where she alleges "the entire atmosphere at the office and the attitude of her supervisors towards her changed completely." Am. Compl. ¶ 38. She alleges that where she was previously being considered for a promotion, *id.* ¶ 39, following her return "those considerations abruptly ended," *id.* ¶ 40. She also alleges that she was "being isolated at work," *id.* ¶ 41, and that she "began suffering from a campaign of retaliation that included unfair criticism, and pressure to resign," *id.* ¶ 42. Finally, in March 2021, she was terminated from her position. *Id.* ¶ 21. Plaintiff summarily alleges that (1) she "was terminated because of her disability, perceived disability, in violation of the ADA," *id.* ¶ 28, (2) she "was terminated for requesting a reasonable accommodation, in violation of the ADA, *id.* ¶ 29, and (3) her "termination violated the FMLA because it was done

---

[1] The Amended Complaint does not make clear whether or not she returned to work before contracting COVID-19.

in retaliation for using FMLA qualifying leave," *id.* ¶ 44.  Plaintiff's Amended Complaint identifies no specific facts to support these inferences.

## II. Standard of Review

Within the Third Circuit, motions to dismiss under Fed. R. Civ. P. 12(b)(6) are governed by the well-established standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

## III. Discussion

Plaintiff identifies three legal claims.  Under the ADA, listed as Count I, she brings distinct claims for discrimination and retaliation. And under the FMLA, listed as Count II, she brings a retaliation claim.

### A. Discrimination under the ADA

To succeed on a claim for discrimination under the ADA pursuant to 42 U.S.C. § 12112(a), a plaintiff must establish a prima facie case of discrimination by showing "(1) that [she] is disabled within the meaning of the ADA, (2) that [she] is otherwise qualified for the job, with or without reasonable accommodations, and (3) that [she] was subjected to an adverse employment decision as a result of discrimination." *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010). The burden of establishing a prima facie case "is not onerous," *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981), and presents a "low bar" for employment-discrimination plaintiffs, *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 (3d Cir. 2006). Even if I assume that Plaintiff has adequately pleaded a qualifying disability under the ADA with respect to her gallbladder condition, she has not adequately pleaded her qualifications or that the adverse employment decision resulted from the discrimination alleged.[2]

---

[2] As I recently discussed in *Laguna v. Chester Hous. Auth.*, No. 22-1569, 2022 WL 2953687 (E.D. Pa. July 25, 2022), the ADA provides that an individual has a disability if she (1) has "a physical or mental

The Third Circuit's decision in *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) is instructive. There, the Third Circuit found that an ADA claim that was "not as rich with detail as some might prefer" had still been adequately pleaded under the Supreme Court's *Twombly* standards. 578 F.3d at 211-212. The plaintiff pleaded:

> how, when, and where UPMC allegedly discriminated against Fowler. She avers that she was injured on the job and that her doctor eventually released her to perform "sedentary work." She pleads that UPMC gave her a light-duty clerical position. She also avers that before the elimination of her light duty clerical position, she applied for a telephone operator position, but "was never contacted by UPMC regarding that position." Fowler further alleges that she contacted "Susan Gaber, a Senior Human Resources Consultant with the Defendant, UPMC Shadyside, regarding [a] number of vacant sedentary jobs," but that she was "never contacted by UPMC regarding any open positions." Fowler's complaint alleges that UPMC "failed to transfer" her to another position in September of 2003. Fowler further pleaded that she was "terminated because she was disabled" and that UPMC discriminated against her by failing to "transfer or otherwise obtain vacant and funded job positions" for her.

*Id.* at 212. This level of detail is a far cry from what the present Plaintiff pleads in the operative complaint. She alleges:

- that in light of her gallbladder condition, she "requested a reasonable accommodation of time off from work," but does not identify when or to whom she made such requests, what she requested, or how Defendant's agents purportedly responded to such requests, Am. Compl. ¶ 25;

---

impairment that substantially limits one or more major life activities of such individual"; (2) has "a record of such an impairment"; or (3) is "regarded as having such an impairment." 42 U.S.C. § 12102(1). The 2008 ADA Amendments Act ("ADAAA") was enacted to clarify that the definition of "disability" should be construed "in favor of broad coverage of individuals ... to the maximum extent permitted." 42 U.S.C. § 12102(4)(A). Therefore, courts must interpret the term "substantially limits" consistently with the liberalized purposes of the ADAAA. *Id*. § 12102(4)(B). The EEOC subsequently updated its regulations to provide that, with respect to an "actual disability" claim, as here, impairments lasting fewer than six months may be substantially limiting. 29 C.F.R. § 1630.2(j)(1)(ix). Thus, under the current regulations, the duration of an impairment is just one factor to consider in determining whether an impairment substantially limits a major life activity.

Here Plaintiff appears to plausibly plead her gallbladder condition as a disability under the ADA. However, her pleadings related to COVID-19 are particularly sparse, failing to allege how it substantially limited any major life activities, how long it lasted, or even whether it occurred during or after her leave of absence for surgery.

- that she returned to work, at some unspecified time, where she alleges "the entire atmosphere at the office and the attitude of her supervisors towards her changed completely," without even one example, Am. Compl. ¶ 38;

- that where she was previously being considered for a promotion, Am. Compl. ¶ 39, following her return "those considerations abruptly ended," without providing any details about what the promotion would have entailed, Am. Compl. ¶ 40;

- that she was "being isolated at work," Am. Compl. ¶ 41, and that she "began suffering from a campaign of retaliation that included unfair criticism, and pressure to resign," without explanation, and without specifying by whom pressure was being exerted, Am. Compl. ¶ 42.

Plaintiff follows this by pleading that she was terminated from her position. Am. Compl. ¶ 21. This general outline of conclusory statements does not "nudge[] her claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To allege plausible discrimination, Plaintiff need not have "detailed evidence," but must give CHOP fair notice of her claim and "raise the reasonable expectation that discovery will uncover evidence of discriminatory motive." *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 267 (3d Cir. 2021) (internal quotation marks omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff's factual allegations here appear almost entirely subjective, reflecting her personal belief that she was removed from consideration of promotion or was subject to isolation and unfair criticism based on her disabilities. *See Tillman v. Redevelopment Auth.,* No. 12-cv-1505, 2013 WL 5594701, at *8 (E.D. Pa. Oct. 11, 2013) ("A plaintiff's own unsubstantiated, subjective beliefs of suspicions alone would not suffice to persuade a rational trier of fact that age [or race] was a factor in the termination decision."). She alleges no communications or discrete actions on the part of her managers or co-workers besides her own conclusory summaries thereof such that a reasonable expectation might be raised as to the likelihood of discovering evidence of discriminatory motive.

B. <u>Retaliation under the ADA</u>

"To establish a prima facie case of retaliation under the ADA, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Krouse v. Am. Sterilizer Co*., 126 F.3d 494, 500 (3d Cir. 1997) (citations omitted). "[U]nlike a general ADA discrimination claim, an ADA retaliation claim does not require that the plaintiff demonstrate a disability within the meaning of the ADA, but only that the plaintiff has a reasonable, good faith belief that [she] was entitled to request the reasonable accommodation [he] requested." *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 188 (3d Cir.2010) (internal citation omitted). "Prohibited discrimination under the ADA includes retaliation against an employee for requesting an accommodation." *Id.*

Plaintiff here fails to allege a protected activity and a causal connection between that protected activity and the alleged termination. The only paragraph of the Amended Complaint that reflects a protected activity is an allegation that "Plaintiff requested a reasonable accommodation of time off from work." Am. Compl. ¶ 25.  She does not indicate when this request was made or who this was made to.  She does not indicate what, if any, Defendant's response was.  Plaintiff merely indicates that she took such time off and then later returned to work.  This is simply not sufficient to plausibly allege a violation of the law.

This sparsity of pleading makes it more difficult to find a causal connection as well. Any request for a reasonable accommodation presumably would have occurred in or before October 2020, prior to her medical leave for surgery.  Yet her termination did not occur until March 2021.  This six-month gap in time is not in itself "unusually suggestive of retaliatory motive." *Shaner v. Synthes*, 204 F.3d 494 (3d Cir. 2000) (citing *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494 (3d Cir.

6

1997)). In the meantime, Plaintiff alleges in vague and conclusory terms that following her return from leave, "the entire atmosphere at the office and the attitude of her supervisors towards her changed completely," Am. Compl. ¶ 38, that she was no longer under consideration for a promotion, *id*.. ¶ 39-40, that she was "being isolated at work," *id*. ¶ 41, and that she "began suffering from a campaign of retaliation that included unfair criticism, and pressure to resign," *id*. ¶ 42. However, Plaintiff's bare-bones allegations here do not self-evidently ground her conclusory causation argument. While "evidence of intervening antagonism or retaliatory animus" may help causally bridge a temporal gap between a request for reasonable accommodation and termination, *Krouse*, 126 F.3d at 504, summarily pleading that "there was a clear retaliatory animus held by her employer" does not plausibly allege a cause of action for retaliation.  Am. Compl. ¶ 41.

C. Retaliation under the FMLA

To succeed on an FMLA retaliation claim, a plaintiff must show that "(1) [she] invoked [her] right to FMLA-qualifying leave, (2) [she] suffered an adverse employment decision, and (3) the adverse action was causally related to [her] invocation of rights." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.,* 691 F.3d 294, 301–02 (3d Cir. 2012). *See Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 509 (3d Cir. 2009) (holding that "firing an employee for a valid request for FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation against the employee.").

"To invoke rights under the FMLA, employees must provide adequate notice to their employer about their need to take leave." *Lichtenstein*, 691 F.3d at 303.   "The critical question is how the information conveyed to the employer is reasonably interpreted. An employee who does not cite to the FMLA or provide the exact dates or duration of the leave requested nonetheless may have provided his employer with reasonably adequate information under the circumstances to

understand that the employee seeks leave under the FMLA." *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 402 (3d Cir. 2007). While the notice requirement is given a "liberal construction," that does not mean that Plaintiff's pleadings can simply rest on legal conclusions to fulfill it. The only paragraph of the Amended Complaint that suggests that Plaintiff invoked her FMLA rights is ¶ 36 which states that "Plaintiff invoked her right to leave for both of these medical conditions, and took medical leave in order to get treatment for and recover from her injuries." But this simply restates the legal element of a FMLA claim. It is impossible to determine whether the notice here was adequate for the employer to understand whether FMLA leave was sought because Plaintiff has identified no factual predicates of the communication.

Further, even had she adequately pleaded her invocation of FMLA rights, as with the ADA retaliation claim, she hasn't plausibly connected it to her termination. There are no allegations of statements or actions on the part of CHOP supervisors that give rise to an inference of discrimination.

### IV. Conclusion

For the reasons stated above, Defendant's Motion to Dismiss will be granted and Plaintiff's Amended Complaint will be dismissed without prejudice, with one last opportunity to amend.

    /s/ Gerald Austin McHugh
    United States District Judge